May it please the court. My name is Eric Preeb and I'm here on behalf of the appellant Mr. Raul Gardea. Before I begin I'd like to reserve five minutes of my time for rebuttal. This case requires the court to examine the final stages of an appeal. There were two specific processes that went awry. First, what's to be done about Mr. Gardea's disability, his permanent lifting restriction? And second, why is Mr. Gardea's paycheck not reflecting all of the wages that he earned? The district court decided this case on summary judgment, which this court reviews de novo, and we're asking this court to reverse the district court's grant to summary judgment and to remand the case for trial. The facts, very briefly, are this. Mr. Gardea was a maintenance mechanic at JBS, which is a pork processing facility. Mr. Gardea hurt his right arm from his hand. If you're going to go through these facts, it's going to take all your time. I understand. What's important to know is that a couple They're not brief. We read them. Excellent. Okay. Well, I'm asking this court for reversal for a couple of reasons. First, the employer withheld wages from Mr. Gardea. And second, Mr. Gardea could perform his job as a maintenance mechanic. Counsel, on the withholding of wages, it strikes me that the court made an evidentiary ruling early on saying those handwritten notes didn't have foundation, weren't relevant. Once that's done, the only evidence is the employer's records on their employment. And I don't think there's anything wrong with the arithmetic in that, is there? There are problems on the pay stubs themselves, but I'll also direct the court to joint appendix page 360, where Mr. Gardea set out a declaration that contains all of the information that's conveyed in the handwritten notes. Appendix what, 360? 360, that's right. But even with 360 in play, the trial judge made a factual finding, and aren't those fact findings reviewed for clear error? And why are those findings clearly erroneous? That's correct on the standard of review, Your Honor. But if you go through the math of some of these pay stubs, which I'm happy to do, you can see that there definitely were problems with the findings of fact. For one, Judge Jarvie had considered the claim to be something like a $14 claim, and that's simply incorrect. If you look at the appendix 360, it goes through far more than that in terms of time that Mr. Gardea had worked and he had earned wages but was not compensated. But we can go through some of the information here just to be absolutely certain. How much money are we talking about? I think it was around $400 that he was not fully compensated for. But we're going to go through an appeal and then have a trial for $400? That may well be, but what's more important is not the dollar amount that's in play, but the fact that the- I thought we were here for a federal statutory issue. The court denied summary judgment on all of the claims that were in play. That includes ADA claims- You're starting with the $400 claim, counsel. You know, that's a very bad, bad sign. Well, actually, we directed him there, I think, because Paul asked the question and I followed up on it. No, he said he wants to start with that. Oh, did he? Yes. Sorry. Well, it is important, Your Honor, because I will- $400 is not, frankly, that important. Well, it is to Mr. Gardea. But if the court would like to talk about the federal claim, we're certainly happy to do that. Well, you go ahead and you use your time and tell us about the pay stub details. So the pay stubs are here in the record, and if you look at Joint Appendix 362, you can see the first pay stub in issue. This is January 25th, 2014. And you can see from the declaration Mr. Gardea is saying, my pay was shorted. If you thumb forward to the next pay stub, that's fast-forwarding a week later, we see this new line item, which is called Diff Pre-PE. And there's an amount of $23.24 that Mr. Gardea has compensated. No explanation as to the hours worked or the rate there. But if you do the math and divide out this figure of $23.24 by .75, the amount Mr. Gardea says he shorted, you get a figure of $30.98, which is his overtime rate. So based on that record alone and this line entry, which did not appear before, we know that the employer withheld wages. That is very significant. Under Iowa Code 91A.5, an employer is not supposed to withhold or divert wages in this way. And the employer's response that they eventually settled up over a broad enough time period is also not satisfactory. Iowa Code 91A.3 says the employer must pay all wages when due, less any lawful deductions, in installments on regular paydays, which are at consistent intervals from each other, and which are a violation. And that appears in other points in the record. It's crucial to Mr. Gardea because you can't alter the employer-employment relationship in that way. If he does the work, he needs to get paid. And what's the Iowa Supreme Court case saying there's a private right of action for making it up in Week 2? Well, that's from Iowa Code 91A. No, I asked you, is there an Iowa Supreme Court case that will confirm what you just said? That if $24 is withheld and made up in the next week, there's a private right of action with attorney's fees? That's in the statutes of Iowa Code 91A. I'm not sure... You have no case authority, in other words. That was the question I asked. I understand that, Your Honor. I'm not sure... You answer my case question with a statute. Mm-hmm. I'm not sure there is a case that as directly identifies what you're asking about, but the cause of action is there. So at the very least, we see there's fact issues on this claim which warrant a trial. And Judge Jarvie gave that issue short attention in his opinion. For that reason, I asked the court to review that matter and remand it for trial. The second issue on the disability claims. Mr. Gardea has made his prima facie showing on disability claims to preclude summary judgment. The district court correctly gave us the standard... You're familiar with our in-bank decision in Fadley on May of this year, which clarified a lot of these issues. I just want to make sure that you understand that's controlling law and you've studied it. Which case is that, Your Honor? Fadley v. UPS. I'm sorry, Your Honor. I'm not familiar with that case. Well, then you're not arguing probably by... The controlling law is other than how your brief argues. I understand, Your Honor. So if we look at the record here that was developed before Judge Jarvie, we see there's really two core fighting issues. There are about two proposed accommodations. One, whether the use of chain hoists and assistive devices that are already possessed by the employer are a reasonable accommodation. And the second is about team lifting for heavy jobs. I direct the court's attention to plaintiff's expert report, that's Joint Appendix 451 to 53, where an expert conducted an on-site job analysis and concluded that the use of lifting devices and assistive devices would be a reasonable accommodation. Now, clearly the defense disagrees with those contentions, but if you focus on just where the conflict ends, it's really having to do with whether or not these lifting devices, these can they be rigged to the rafters? Mr. Gardea says, yes, they can. And even where there isn't a clear rafter or it isn't obvious, sometimes we weld a bracket. Sometimes we use concrete anchors. These are all things that have been worked around in the past. The same is true for team lifting, which Mr. Gardea is asking for simply as a continuation of the practice that he observed and participated in when he was employed by JVS. So what you really see developing is a fact issue on whether or not these accommodations proposed by Mr. Gardea were reasonable. And the district court resolved that fact issue when really it ought to have been looking for whether there is a triable issue. And we submit that there was. And I'll reserve the rest of my time for rebuttal. Thank you. Mr. Clark. May it please the court and good morning. I'd like to just address the wage claim issue real quickly. Mr. Gardea is claiming that he's owed wages for overtime for 2014. If you look at the record in this case, though, and you are correct, Judge Magnuson, that the district court did strike handwritten notes that were part of his wage stub that he offered in the evidence. And Mr. Gardea is making arguments based on those handwritten notes. So I think that is improper. And I do believe that should not be considered as part of this case as far as the argument goes. The fact of the matter is the only evidence relating to wage claim is the testimony of the HR manager, Pete Charbonneau, which is in the appendix at page 58, where he said all wages and all overtime have been paid for all hours worked by Mr. Gardea in 2014. Mr. Gardea fully admits that he was compensated for his wages. If you look at the record in his deposition on the appendix, page 360, he says he complained about the unpaid wages to human resources and also to the union every day until it was fixed. If I wouldn't have fought for it, I would not have been paid. And then he goes on to itemize some things in his statement on that page. And he talks about missing wages and things like that and goes on to say the following hours were missing but were later backfilled. So by his own testimony, he's been paid in full for these. And there's no evidence by anybody in the record that says any amount is due to him in this case. So there's no probative evidence on his wage claim. And that claim fails. And the district court was correct in finding that he didn't meet his burden. What about this notion that making it up later still violates the Iowa code? I'm not aware of anything that says that. I mean, he was paid. Was that raised in the district court? It was not. It was not raised in the district court. And I don't think there's anything wrong with an employer correcting an error in connection with compensation and paying them after the fact, as long as the employee got paid. So just what's missing is any evidence of anything that's owed in this case by an affidavit or any testimony. Moving on to the disability issue. The real issue in this case as to whether or not Mr. Gardia could be provided an accommodation. This is a case where you have an employee asking an employer to reallocate essential job functions. And that essential job function in this case is lifting. And what he's basically asking for is a helper. He's asking for other maintenance mechanics to come in when he has to do the heavy lifting and help him do that. And that is not required. And the 8th Circuit has said that multiple times in lifting cases, that that is not a reasonable accommodation. Working as a mechanic at JBS, a swift port company, is a very physically intensive job. These guys have to work at all areas and locations in the plant. They have to perform work on heavy equipment. They have to work with heavy parts, motors, conveyors. They have to use heavy tools. And the lifting device itself that Mr. Gardia is asking to use weighs 40 pounds, and his restriction is 35. So he can't even lift the lifting device that he wants to use in this case, on top of anything. The job description is the best evidence as to what the job requires. And the job description in this case, which is in the Joint Appendix 660, says, you've got to be able to lift 50 pounds three to four times an hour. JUSTICE KENNEDY Are you familiar with FATELY? MR. GARDIA I've read that case, Judge. I feel that . . . JUSTICE KENNEDY Well, it's direct on this point. MR. GARDIA With the lifting restrictions. JUSTICE KENNEDY No, that the courts defer to the employer's definition of the essential functions. And I think that's consistent with also the Minahan and Drapinski cases that we cited, but that is correct. And when you defer to the employer in this case, you look at the job description. It does say 50 or more pounds is required three to four times an hour, 75 pounds or more, one to two times an hour in this job. And Mr. Gardia disputes that. He says, look, you don't have to lift that much in an hour. But then he says, I acknowledge you have to do that every day. So he acknowledges, you know, over 50 pounds three to four times a day, over 75 pounds one to two times a day. This is an essential job function in this case. MR. GARDIA Well, it doesn't essentially, his argument, when you get . . . boil it right down, is that if you look at FADELY, and we're going to say that you have to lift the 50 pounds, and we look at . . . we defer to that determination on their job description. And when you look at the holding, which said that if, in fact, by deferring to their job description and to accommodate it, you've made someone unable to perform the essential job function. Isn't that really what the plaintiff has argued here, is that they need to have somebody following them around in order to lift the 50 pounds, or to set up the ladders, or whatever else needs to be done to accommodate his mechanics job. And so if you're going to keep him on this mechanics job, the reasonable accommodation being advocated for is he needs a mechanics helper. And there is no law anywhere that performs their essential job duties, is there? MR. GARDIA There is. There's a Seventh Circuit case they cite, and that's not the law in this circuit. And I think the Minahan case and the Drapinski cases both address that issue you're talking about in the context of lifting restrictions, Judge. In both those cases, they concluded that you don't have to provide a helper. And if lifting's an essential function, you know, that person has to perform it. There's a Seventh Circuit case, this Miller case they cite, which dealt with the bridge crew, and they worked as a team. MR. SORENSEN But they already had a team working on that, right? And so there was already somebody there. I mean, so it's not that you had to hire a helper to be there to help perform the functions, right? There were other people on site who could assist. MR. GARDIA Right. And that's the difference in this case. Mechanics have to be able to work independently. There could be three mechanics working, and there could be three jobs across the facility that have to be worked on right away. And there are not always people available to do any lifting, to help anybody in lifting. And, you know, there's never been any record, different than the Miller case, of other people being excused from performing lifting or as an essential function of the job, which was what was in that case, too. But no, that's absolutely right in the sense that if your job requires you to do the lifting, and you do not have to provide an assistant or a helper in connection with that as an accommodation. You know, in this case, my client, basically, when Mr. Gardia became subject to his restrictions, and he reached maximum medical improvement, these were permanent restrictions. And at that point, there was an evaluation done of all these things, lifting devices, hoists, carts, and they concluded that they could not accommodate him in this work environment. A plaintiff does have an expert that came in and said, why can't he use all these things to do his job? And what he didn't account for is the actual work environment. You can't use lifting devices in many areas of the plant where motors are located. There's nothing to attach it to. To use a lifting device, you have to take a chain and and then you got to attach it to the ceiling or something above it and then crank the chain to lift it out. Many of these items don't have anything above them to do that. Sometimes the motors you have to remove are under machinery. Other times you got to use a ladder, which weighs over 40 pounds to get to the item, and you can't even lift the ladder to do that. So there's so many things about this that makes not only, he talks about reasonable accommodations, these are impossible accommodations in connection with this work environment. And I don't believe there was any evidence disputing those facts of the work environment in this particular case. You know, one thing that I do want to point out in connection with this claim that also with his expert, he talks about ladders and the ladders and wheeling them to certain places. You can't use a wheeled ladder. It's a nine-foot ladder because there's machinery overhead and you just can't get it to the to the spaces you have to go to. You know, the bottom line is this company did everything they could for Mr. Gardea. They gave him light duty for 10 months where he didn't have to perform any jobs that would require him to do any lifting. When it became a permanent restriction, they sat down with him and they went through six jobs to try to find another alternative position for him. Many of those jobs he said, well, I can't do them because it's going to create shoulder problems for me. He didn't have any restrictions in that area. When he was asked to look at jobs on the kill floor, he says, I don't want to work on the kill floor. When he was asked to work for jobs on the second shift, he said, I don't want to work on the second shift. And then he said, finally, do you want to work in this area with which requires knives? I can't work with knives. I'm not going to work with knives. So at that point, they went through all the vacant positions. They placed him on leave. He was never able to come back to work to work as a mechanic and he went and got a job somewhere else. This company went out of its way to try to work with Mr. Gardea. And, uh, unfortunately they could not accommodate the lifting part because that is part of his job in this case. Thank you very much for your time. Unless you have any questions, I think that's all I have. Thank you, counsel. Appreciate it. Thank you. Mr. Creed for rebuttal. Thank you, Your Honor. Just a few points. Um, first on the wage payment claim, the question was posed whether this was, uh, briefed below. If the court looks at joint appendix page 309, Mr. Gardea alleges that the employer failed to pay wages when they were due. The authority cited is 91A section 3. That's exactly the issue I've talked about here this morning. So it was briefed. Error was preserved. No, no. What I meant was when it, when the employer put in evidence showing that, uh, if, if any, any wages were withheld initially, that was made up later. And you asserted that's still a violation of the Iowa code. I wanted to know whether that was raised below. What you just cited doesn't answer that. It doesn't. In the summary judgment process, you have to argue to the district court, wait a minute, that response doesn't make the issue go away. Otherwise you've sandbagged the district court in this court. Now was that argued? It was argued, Your Honor, at joint appendix page 309. Well, you just, the claim cited the statute. That's not making the argument. Where do we go for the transcript of a summary judgment argument or a reply memorandum or somewhere to see that the plaintiff put before the district court the argument you're now making to this court? I don't know if I can identify a better place than where it's written in the brief citing the language of the statute. On the issue of the lifting accommodations and deference to the employer's job description, I'll direct the court's attention to joint appendix 64. This is a job description from the employer. And among the other things, it lists for behaviors necessary to perform the job safely. It says that employers should use proper lifting techniques and get help for awkward or heavy items. And of course, this is consistent with what Mr. Gardea is saying, which is we work together on lifting all the time. Why would that change now that I have these restrictions? So the accommodation he's asking for is please continue the type of work that was already done before. Also on the lifting devices and the overhead rigging, I think that has been discussed by Mr. Gardea in terms of we're working with mechanics here who are skilled individuals and they know how to do their job. So if there's not a place that's obvious to overhead rig a lifting device, they make one. And Mr. Gardea says we've done that in the past. These mechanics are in charge of fabricating some things for the job. And so that's just part of what they do. I'll also point out for lifting or removing motors that are underneath equipment, what is not in play in this case are any pushing and pulling restrictions. So if it's on the underside of the equipment, you detach it and pull it out. Mr. Gardea, what's the difference between lifting and pushing and the difficulty from the beginning? I understand the concern, Your Honor. I'm comparing what was revealed in the functional capacity evaluation versus what he has to do day-to-day. And the functional capacity evaluation said the restriction is lifting floor to waist, the max is 35 pounds, and lifting waist to crown, the max is 25 pounds. So you could do that differently if it's horizontal versus vertical. I guess that's the big difference. So I just want to emphasize that the purpose on summary judgment is to identify fact issues. And even though there's two processes here, wage payment and accommodation, two processes that went awry, it's not for the court on summary judgment to ultimately decide who is right or wrong. The court asks could a reasonable jury hearing the opposing views on an issue find in favor of the plaintiff. So we we ask that the court heed the posture of the case. And that's crucially important in a case that's as fact driven as this one. So for those reasons, we're asking that the court reverse the district court and remand this to trial so that some of these fact issues can be determined by the finder of fact. Thank you. Thank you counsel. The case has been thoroughly briefed and argued and we'll take it under judgment.